G. Bryan Ulmer (PHV #60096)
Catherine E. DiSanto (PHV #60097)
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290
(307) 733-5248 Fax
ulmer@spencelawyers.com
disanto@spencelawyers.com

Vicki R. Slater (MSB #9759)
THE LAW OFFICES OF VICKI R. SLATER
Post Office Box 23551
Jackson, MS 39205
(601) 987-8184
(601) 987-8188 (fax)
vicki@vickislater.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| VIRGINIA HAYES,<br><br>Plaintiff,<br><br>vs.<br><br>THE CITY OF MAGEE, MISSISSIPPI; CHARLES R. CRAWFORD, in his individual and official capacities as Chief of Police of the Magee Police Department, VERNON DAMPIER in his individual capacity as a City of Magee police officer; CHARLES ALEXANDER in his individual capacity as a City of Magee police officer; LINCASTER EASTERLING, in his individual capacity as a City of Magee police officer,<br><br>Defendants. | Case 3:23-cv-00327-CWR-FKB<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF RESPONSE TO DEFENDANTS' CITY OF MAGEE AND CHARLES CRAWFORD'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Plaintiff, by and through counsel, submits this Memorandum in Support of her Response in opposition to Defendants' Motion for Judgment on the Pleadings. [ECF No. 17]. Plaintiff's Complaint contains sufficient and specific factual allegations to both apprise Defendants of their unconstitutional conduct and to state a claim upon which relief may be granted. Defendants' motion should be denied.

## BACKGROUND

On May 25, 2020, Plaintiff and her two sons, B.H. and J.H. (then 9 and 5 years old, respectively), traveled from their home in New Mexico to Amarillo Texas. [*Complaint*, ECF No. 1 ,¶ 19]. In Amarillo, Plaintiff picked up her friend and traveling companion, Katarina Evans, who joined Plaintiff and her sons on a trip to Florida. [Id.]. The group began their trip from Amarillo, Texas, to Florida on the morning of May 26, 2020. [Id. at ¶ 21].

In the early morning hours of May 27, 2020, on-duty, uniformed City of Magee Police Officers Vernon Dampier, Charles Alexander, and Lincaster Easterling stopped Plaintiff's vehicle at a police checkpoint outside of Magee, Mississippi. [Id. at ¶ 22]. Ms. Evans was driving. [Id.]. At the checkpoint, three patrol cars were stopped with their lights flashing. [Id. at ¶ 23]. All three officers were fully uniformed in khaki pants; tactical black boots; dark blue polo shirts and reflector vests; and were carrying radios and flashlights. [Id. at ¶ 24]. Ms. Evans eased the car into the left-hand land and brought it to a stop, as directed by the officers. [Id. at ¶ 25]. Two of the officers approached the driver's and the passenger's windows. [Id. at ¶ 26].

As the officers initiated conversation with Plaintiff, one of the officers inquired about a container of medical marijuana in the center console. [Id. at ¶ 27]. The officer inquired about the marijuana. [Id. at ¶ 28]. Plaintiff provided her active medical cannabis card issued by the New Mexico Department of Health and explained that she is a licensed medical marijuana patient in

New Mexico. [Id. at ¶ 29]. The officer then asked Plaintiff to get out of the car, and Plaintiff complied. [Id. at ¶¶ 30–31].

The officer then asked Plaintiff to follow him to his patrol car. [Id. at ¶ 32]. Once at the patrol car, Plaintiff was accompanied by Officer Alexander and Officer Dampier. [Id. at ¶ 37]. Officer Easterling, who stayed by Plaintiff's vehicle, continued questioning Ms. Evans. [Id. at ¶ 41]. Officers Dampier, Alexander, and Easterling either did not activate or turned off their body-worn cameras, in violation of MPD's body Worn Camera Policy. [Id. at ¶¶ 33–35].

Defendant Alexander or Defendant Dampier told Plaintiff that she had two options: they could search her vehicle, take Plaintiff to jail, and take her children away from her, or Plaintiff could perform sex acts on the officers. [Id. at ¶ 38]. Specifically, Plaintiff was told: "You can suck my dick and I'll get rid of all of this." [Id.] Plaintiff, trembling and scared, stated she did not want to go to jail. [Id. at ¶ 39]. The officers then escorted her to the front passenger seat of a patrol car and forced her to sit down. [Id. at ¶ 40]. Simultaneously, before she was even settled in the front seat, the first officer—either Dampier or Alexander—unzipped his pants, put his penis in her face, and told her to "suck it." [Id. at ¶ 42]. During this time, Defendant Easterling remained with Ms. Evans and Plaintiff's children. [Id. at ¶ 41]. One of the officers shined a bright light toward Plaintiff, believed to be a filming device. [Id. at ¶ 43]. At some point, the officers switched positions and the second officer forced Plaintiff to perform oral sex on him. [Id. at ¶ 43]. Plaintiff was told she was good to go and returned, distraught, to her vehicle. [Id. at ¶ 50].

As Plaintiff approached her vehicle, either Defendant Alexander or Defendant Dampier asked if Defendant Easterling—who had remained at the vehicle with Ms. Evans and Plaintiff's children—if he "wanted some too." [Id. at ¶ 51]. Defendant Easterling said "Nah, I'm good." [Id.

at ¶ 52]. Plaintiff got back into her vehicle, and the officers waved them through the checkpoint. [Id. at ¶ 55].

## PROCEDURAL BACKGROUND

Plaintiff initiated this action on May 22, 2023. [*Complaint*, ECF No. 1]. On September 6, 2023, Defendants City of Magee, Mississippi ("the City") and Charles Crawford filed their Answer, asserting in the same eighteen affirmative defenses.[1] [*Answer*, ECF No. 13]. On November 29, 2023, the day before the Court's November 30 initial scheduling conference, Defendants City of Magee and Crawford filed their Motion for Judgment on the Pleadings. [*Defs.' Mot. for Jmt. on Pleadings*, ECF No. 16]. Despite the parties' conferral as to scheduling and discovery and their submission of a stipulated case management plan, Defendants clarified at the conference their intent to stay all discovery pending resolution of their *Motion*. As such, no case management order has been entered by this Court and discovery remains stayed until resolution of this matter.

## LEGAL STANDARD

Courts evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[1] Defendants Alexander, Dampier, and Easterling filed their Answer on September 5, 2023. [ECF No. 12].

A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 369 (E.D. La. 2016) (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Guidry*, 512 F.3d at 180. If unsupported by factual allegations, mere legal conclusions are disregarded. *Twombly*, 550 U.S. at 555. In the context of § 1983 claims, however, "only minimal factual allegations should be required at the motion to dismiss stage." *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011). Moreover, dismissal is "a harsh remedy," and the Court must be cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *DeCossas v. St. Tammany Par. Sch. Bd.*, No. CV 16-3786, 2017 WL 1133114, at *7 (E.D. La. Mar. 27, 2017).

## ARGUMENT

Defendants request the Court dismiss Plaintiff's municipal liability and failure-to-train claims for failing to specify which actions or policies were taken by Defendants or how their conduct violated Plaintiff's constitutional rights. [*Defs.' Mot.*, at 4–11]. Next, Defendants argue that Plaintiff's claims against Crawford in his individual capacity must be dismissed because Plaintiff cannot overcome qualified immunity. [*Defs.' Mot.*, at 11–15]. Plaintiff has raised facially plausible claims in her Complaint against the City and Crawford. As more thoroughly set forth below, Plaintiff's Complaint contains detailed factual allegations that satisfy the minimal pleading standard under Rule 8 of the Federal Rules of Civil Procedure and, when those factual allegations

are considered in the light most favorable to Plaintiff under Rule 12(c), they sufficiently state a claim upon which relief may be granted. Accepting all well-pleaded facts as true, and drawing all reasonable inferences in favor of Plaintiff, the Court must deny Defendants' motion for judgment on the pleadings.

## I. Plaintiff's Complaint Contains Sufficient Factual and Legal Allegations to Apprise Defendants of their Municipal Liability for Failure to Train

### A. Municipal Liability under § 1983

Section 1983 provides, in pertinent part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights; "rather, it provides redress for a violation of a constitutional right or a right created by federal law." *City of Jackson v. Johnson*, 343 So. 3d 356, 372 (Miss. 2022) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002)). In this context, municipalities are considered among those "persons" who may liable for civil rights violations as identified in § 1983. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

Importantly, a viable § 1983 claim against a municipality does not proceed upon a theory that the municipality is vicariously liable for the acts of its employees. *Id.* at 691, 98 S. Ct. 2018 (holding that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Accordingly, a plaintiff must show that the City itself violated her constitutional rights. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by

those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S. Ct. 2018. For liability to attach, a municipality's "official policy" must be the "moving force of the constitutional violation . . . ." *Id.*

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403–04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.*

**B. Plaintiff's third claim for *Monell* municipal liability is sufficiently plead.**

Plaintiff's third claim for relief alleges municipal liability on the part of the City and Crawford, in his official capacity.[2] As Defendants correctly recognize, municipal liability may attach under § 1983 where a plaintiff can demonstrate "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.'" *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "Additionally, either the official policy itself must be unconstitutional or it must 'have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *Shumpert*, 905 F.3d at 316 (quoting *Johnson v. Deep E.*

[2] A suit against a government officer "in his official capacity" is no different from a suit against the government entity of which he is an agent. *Burge v. Parish of St. Tammany* (*Burge I*), 187 F.3d 452, 468 (5th Cir.1999) (quoting *McMillian v. Monroe County*, 520 U.S. 781, 785 n. 2, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)); *see also Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n. 55, 98 S.Ct. 2018)).

*Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)) (internal citation omitted). Under this standard, the official policy may be written, or it may be "an unwritten but 'widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018)).

*i. Policymaker*

Plaintiff has adequately pleaded that Defendant Crawford was the official policymaker "with actual or constructive knowledge of the constitutional violation." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). A policymaker is one "who takes the place of the governing body in a designated area of city administration." *Id.* (quoting *Webster*, 735 F.2d at 841). He or she must have final policymaking authority, *Davis v. Tarrant County.*, 565 F.3d 214, 227 (5th Cir. 2009), and whether an official has "final policymaking authority" is a question of state law. *Id.* (citation omitted).

Defendants claim that Plaintiff's claim fails because she has failed to establish the first element: that Defendant Crawford was the final policymaker. [*Defs. Mot.* at 7]. Citing Miss. Code. Ann. § 21-19-15(1) (2020), which states that "[t]he governing authorities of municipalities shall have the power to make all needful police regulations necessary for the preservation of good order and peace of the municipality and to prevent injury to, destruction of, or interference with public or private property[,]" Defendants assert that the Board of Aldermen—not Crawford—is the true policymaker for the City of Magee. [*Defs. Mot.* at 7]. Defendants are incorrect.

"Federal district courts in Mississippi have held chiefs of police to be final policymakers over municipalities' law enforcement functions." *Est. of Manus v. Webster Cnty., Miss.*, No. 1:11-CV-00149-SA-DAS, 2014 WL 1285946, at *23 (N.D. Miss. Mar. 31, 2014), *rev'd in part on other*

*grounds on reconsideration*, No. 1:11-CV-00149-SA-DAS, 2014 WL 2207851 (N.D. Miss. May 28, 2014), *and opinion clarified*, No. 1:11-CV-00149-SA-DAS, 2014 WL 3866577 (N.D. Miss. Aug. 6, 2014); *see also Moore v. City of Columbus*, 2012 WL 2562841, at *2 (N.D.Miss. June 29, 2012); *Taylor v. Town of DeKalb, Miss*., 2009 WL 1748523, at *4 (S.D.Miss. June 19, 2009); MISS. CODE ANN. § 21–21–1. Crawford's role as policymaker is also codified at Miss. Code. Ann. § 21-21-1, which provides: "The marshal or chief of police shall be the chief law enforcement officer of the municipality and shall have control and supervision of all police officers employed by said municipality."[3] MISS. CODE ANN. § 21-21-1 (Westlaw 2020). Moreover, "[a] city's governing body may delegate policymaking authority (1) by express statement or formal action or (2) it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010) (internal quotation marks omitted).

Plaintiff sufficiently alleges that "Defendant Randy Crawford was, at all relevant times to this action, the Chief of Police for the MPD with final policy-making authority." [*Complaint*, ECF No. 1, ¶ 11]. Plaintiff also asserts that "Defendant Crawford was responsible for the overall administration of department operations and direction of the department's planning and research efforts, fiscal management, training initiatives, and professional standards, as well as for ensuring his personnel obey the laws of the State of Mississippi and of the United States." [Id.]. Plaintiff's Complaint clearly alleges that as policymaker for the City and the MPD, "Defendant Crawford

---

[3] Magee is a municipality classified as a "city" under Mississippi law:

> The municipal corporations existing in this state are divided into three classes, to wit: cities, towns and villages. Those having two thousand inhabitants or more shall be classed as cities; those having less than two thousand and not less than three hundred inhabitants shall be classed as towns; and those having less than three hundred and not less than one hundred inhabitants shall be classed as villages.

MISS. CODE ANN. § 21-2-1 (2020).

had the authority to make, change, or maintain final decisions affecting policies and customs without constraint." [Id. ¶ 79]. Put simply, Plaintiff has adequately alleged that Crawford is the official policymaker who is charged with actual or constructive knowledge of an unconstitutional policy or custom, satisfying the first element.

ii. *Official Policy or Custom*

A municipality may be liable under § 1983 if it maintained a widespread, persistent practice of allowing the use of excessive police force. *See Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.1984). To meet her burden, Plaintiff may "attempt to prove other similar incidents of the use and toleration of excessive force." *Mitchell*, 184 F. Supp. 3d at 369. It is also well-settled that "a City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens," and could be evidenced by a "purely formalistic investigation." *Id.* (citing *Piotrowski*, 237 F.3d at 581–82 (5th Cir. 2001)).

Defendants contend that Plaintiff "fails to identify the City's policy or custom with sufficient detail." [*Defs.' Mot*. at 7]. However,

> In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general.

*Thomas*, 800 F. Supp. 2d at 842–43. Here, without the benefit of discovery, Plaintiff has alleged numerous facts "from which one could make a reasonable inference of a persistent, widespread practice by [MPD] officers" of using excessive force; unconstitutional restraint; sexual misconduct including sexual harassment, sexual assault, or sexual abuse; and other violations to the

constitutional rights of Plaintiff "rising to the level of a custom having the force of official City policy." *Mitchell*, 184 F. Supp. 3d at 370.

First, Plaintiff claims that Defendant Officers Dampier, Alexander, and Easterling were acting pursuant to an unlawful policy or custom exhibiting "deliberate indifference to the constitutionally protected rights of persons in or traveling through Magee, Mississippi[.]" [*Complaint*, ECF No. 1, ¶ 81]. Plaintiff also claims that it was the policy and/or custom of the City and/or Crawford not to enact or enforce "policies or procedures relating to sexual assault and sexual harassment," [Id. at ¶ 83], creating "a climate within MPD where officers considered sexual assault an acceptable practice and engaged in unconstitutional restraint of members of the public." [Id. at ¶ 100]. Even more specifically, Plaintiff points to Defendant Crawford's failure to refer the incident out for investigation, despite his knowledge of the assault, and the custom of MPD to not require either an internal investigation nor "an external, independent investigation following a citizen complaint of sexual assault by an MPD law enforcement officer." [Id. at ¶¶ 87–88]; *Mitchell*, 184 F. Supp. 3d at 369. Plaintiff's Complaint alleges a custom and culture within MPD in which MPD personnel had the reasonable belief that their actions would not be properly monitored and that their misconduct would not be thoroughly investigated or sanctioned—as evidenced "by the fact that Defendants Dampier, Alexander, and Easterling remained employed with the MPD following the incident." [Id. at ¶ 101].

Moreover, Plaintiff alleges that MPD encouraged a policy of (1) misusing a law enforcement position to coerce sexual acts; (2) engaging in sexual acts or behavior while on duty or while using agency or government equipment; (3); using "shakedowns" to extort sexual favors; and (4) initiating sexual contact with individuals contacted within the context of law enforcement duties. [Id. at ¶¶ 93–96]. In stark contrast to Defendants' assertion that Plaintiff "fails to identify

the City's policy or custom with sufficient detail" and that her Complaint "identifies just one 'specific fact,'" [*Defs. Mot.* at 7], Plaintiff's complaint sets forth twenty-seven distinct paragraphs detailing with specificity the policies alleged to be unconstitutional. *See* [*Complaint*, ECF No. 1, ¶¶ 77–103]. Plaintiff has provided sufficient support to satisfy the second element.

iii. *Deliberate Indifference*

Defendants contend that Plaintiff's complaint lacks adequate facts to overcome the third element of deliberate indifference because she "has not alleged any past acts of sexual assault or the use of excessive force relating to the City, much less a pattern of similar violations." [*Defs.' Mot.*, at 8]. Defendants' contention appears to focus on the third element: whether the municipal policy or custom was the moving force behind the constitutional deprivation. Plaintiff's Complaint alleges that Defendants were responsible for supervising MPD officers and that they created or promulgated customs, policies, and practices that were ultimately utilized or practiced by Defendant Crawford in the supervision of the Magee Police Department, and that this amounted to deliberate indifference toward Plaintiff's constitutional rights. [ECF No. 1, at ¶¶ 77–103].

The pattern and practice of these unconstitutional policies are demonstrated by the multiple Defendants participating in the unconstitutional detention and sexual assault of Plaintiff without question or hesitation. All three officers acted quickly and methodically in removing Plaintiff from her vehicle and separating her from her children. Defendant Easterling remained with the children and Ms. Evans while the other officers lead Plaintiff to their patrol vehicle. Either Defendant Dampier or Defendant Alexander threatened Plaintiff with ticketing, jail, and removal of her children if she did not perform sex acts on him. Both Defendant Dampier and Defendant Alexander forced Plaintiff to perform oral sex on them, and at least one of them filmed Plaintiff with a camera. Neither intervened on Plaintiff's behalf. Defendants Dampier and Alexander then invited

Defendant Easterling to participate in the sexual assault of Plaintiff, and Defendant Easterling's response indicated that he had personal knowledge of the events that had just taken place. Further, *all* of the individual Defendants either failed to activate or turned off their body-worn cameras, in violation of Magee Police Department's (albeit bare-bones) body-worn camera policy. Had there not been an unconstitutional pattern or practice of this type of excessive force, battery, false imprisonment, and sexual assault, at least one of the defendant officers would have intervened. But no one did. This behavior demonstrates that this conduct is not a single incident of behavior leading to constitutional deprivations.

Moreover, Plaintiff has established that Defendants' policy of not disciplining officers and refusing to terminate or separate from employment individuals unfit to serve as officers at the MPD was a "moving force" behind her injuries. "The 'moving force' inquiry imposes a causation standard higher than 'but for' causation." *Vess v. City of Dallas*, 608 F. Supp. 3d 434, 454 (N.D. Tex. 2022) (quoting *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015)). Here, Plaintiff has "plausibly pleaded" that this policy was "known throughout the department and that the policy caused [her] injuries." *Vess*, 608 F. Supp. 3d at 454.

In *Vess*, the court permitted plaintiff's municipal liability claim to proceed on a Rule 12(c) motion for judgment on the pleadings where the plaintiff alleged that the municipality engaged in a persistent and widespread practice of "protecting individuals who are unfit to serve . . . despite their misconduct." *Id.* at 452. There, the plaintiff alleged in his first amended complaint that the department "did not conduct an internal affairs investigation" of the offending officer after his confrontation with the plaintiff, arguing that he was "quietly cleared," and that the department did not conduct a thorough investigation nor did it work "to ensure a deeper investigation was done" with an outside agency *Id.* The court held that the plaintiff had adequately alleged that this policy

of failure to discipline *and* that she had made "the difficult causal leap that a policy of protecting bad apples caused [Defendant] to think he could assault a homeless man." *Id.* at 454. In finding that plaintiff had "plausibly pleaded that this policy . . . was the moving force behind [Defendant's] actions," satisfying the third element of plaintiff's *Monell* claim, the court observed:

> This conclusion is not an unfounded outlier. Numerous courts have held that a policy of lack of discipline and protection plausibly emboldens officers to engage in misconduct. *See Gentile v. Cnty. of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991); *Ramirez v. Escajeda*, 2021 WL 3713064, at *48 (W.D. Tex. Aug. 20, 2021) ("[A] reasonable jury could infer that Escajeda may have deemed that using force was an 'easy fix' to complex situations like the one he encountered on June 23, 2015, because Chief Allen failed to reinforce the right behavior through discipline."); *Sanchez*, 283 F.Supp.3d at 544 ("[T]he failure to discipline other officers created a culture that emboldened the officers in this case to engage in the conduct that resulted in Salas-Sanchez's death."); *Spearman v. Elizondo*, 230 F.Supp.3d 888, 896 (N.D. Ill. 2016) ("[I]t is inferable that lack of discipline (and its deterrent effect) is a municipal policy that caused, in some sense, the bad acts alleged in the complaint." (quotation omitted)); *Pipitone v. City of New York*, 57 F.Supp.3d 173, 196 (E.D.N.Y. 2014) ("It is plainly foreseeable that the failure to discipline an officer who has been caught red-handed might embolden that officer's close associates and colleagues to engage in similar misconduct."); *Teasley v. Forler*, 548 F.Supp.2d 694, 707 (E.D. Mo. 2008).

*Id.* at 454–55. Here, not only did all three Defendant officers fail to follow MPD's Body-Worn Camera Policy, but no internal investigation was performed; no disciplinary hearing or procedure was enacted; and all officers remained employed with the MPD following the incident, despite Crawford's notice of the incident. It is at least "inferable that lack of discipline (and its deterrent effect)" was a municipal policy that emboldened the individual Defendants to act "above the law" and cause Plaintiff's injuries. *Id.* (citing *Pipitone*, 57 F.Supp.3d at 196). Plaintiff has plausibly pleaded that the policy of failing to discipline errant officers was a moving force behind Defendants' actions. *Id*. at 455; *Brown v. City of Hazlehurst*, 741 So. 2d 975, 982 (Miss. Ct. App. 1999) (citing *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997)).

In sum, and contrary to the Defendants' arguments, Plaintiffs' allegations are sufficient to survive judgment on the pleadings. Post-*Twombly* and *Iqbal*, "courts have split as to the level of specificity required for pleading municipal liability claims." *Mitchell*, 184 F. Supp. 3d at 374; *Thomas*, 800 F.Supp.2d at 841–45 (describing different approaches taken by courts). While this Circuit consistently disapproves of complaints that merely regurgitate failures to train, supervise, or discipline as an element of a § 1983 municipal liability claim, *Whitley*, 726 F.3d at 649, it also denies dismissal where "a plaintiff can transcend bare, conclusory allegations to state a plausible claim for relief by identifying in the complaint, among other things, 'past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy.'" *Mitchell*, 184 F. Supp. 3d at 374 (quoting *Thomas*, 800 F.Supp.2d at 843–44 (footnotes omitted). Plaintiff has plausibly alleged multiple harms she suffered, including sexual assault and unconstitutional conditions of detainment; that the misconduct occurred in the open; and that multiple officers were involved. *Id.* She has also identified "the specific topic[s]" of the deficient policies and training inadequacies. And while discovery has not yet commenced, the deliberate indifference shown by the individual officers on May 27, 2020, leads to the reasonable conclusion that the individual Defendants were well-acquainted with this type of excessive force, and that Plaintiff's assault was built on a pattern and practice of past violations against others. "Where a plaintiff provides more than a boilerplate recitation of the grounds for municipal liability, and instead makes some additional allegation to put the municipality on fair notice of the grounds for which it is being sued, 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'" *Thomas*, 800 F.Supp.2d at 843–44 (quoting *Leatherman v.*

*Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).

## II. Plaintiff's Complaint Contains Sufficient Factual and Legal Allegations to Apprise Defendants of her Claim for Failure to Train

A supervisor may be liable for failure to supervise or train if "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Defendants contend Plaintiff's failure to train claim must be dismissed because she has failed to establish any of the three requisite elements.

### A. Failure to supervise or train

A claim for failure to train must allege specific facts that show that the municipality adopted inadequate training policy procedures. *Barnes v. City of El Paso*, No. EP-22-CV-161-KC, 2023 WL 4097075, at *11 (W.D. Tex. June 12, 2023).

> Of course, courts should only require "minimal factual allegations" about the training programs at the pleading stage, since "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011). Still, a plaintiff cannot state a failure-to-train claim by making a "conclusory allegation that it is 'apparent from the facts of [the] case' that [ ] excessive force training . . . was insufficient." *Speck*, 606 F. App'x at 736.

*Id.* Plaintiff has met that threshold here. As discussed more thoroughly above, Plaintiff's complaint includes specific, detailed allegations regarding Defendants' failure to train MPD officers on topics including: sexual assault and sexual harassment [*Complaint*, ECF No. 1, at ¶ 83]; sexual misconduct by law enforcement; including sexual harassment, sexual assault, or sexual abuse of any citizen or fellow employee [Id. at ¶ 85]; and excessive, unreasonable, or unlawful force [Id. ¶

90]. "It would appear fundamental to even the most casual of observers that these concerns might be best addressed through proper training." *Sanchez v. Gomez*, 2020 WL 1036046, at *37 (W.D. Tex. Mar. 3, 2020).

Defendants' contention that Plaintiff's Complaint merely alleges that the individual defendants were "unsatisfactorily trained"—and therefore misses the threshold to trigger the City's liability—is a misreading of Plaintiff's Complaint and contentions and amounts to mere cherry-picking.[4] [*Defs.' Mot.*, at 5–6]. Plaintiff's allegations, which include *both* complete failures to train *and* failures to "adequately" train, identify the areas of deficiencies in the training provided and relate them to the ultimate injury. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205 (1989); *Barnes*, 2023 WL 4097075, at *15 (finding allegations sufficient to state a failure to supervise claim where "[t]he factual allegations, if true, establish the '*absence* of a policy' of investigating excessive force violations . . . of which [the sheriff] had knowledge.") (emphasis in original).

Plaintiff also alleges that Defendants failed to train MPD officers regarding these topics despite the obvious need to do so. [*Complaint*, at ¶ 98]. Defendants attack Plaintiff's initial pleading for pointing out areas of constitutional significance which are "widely known" to be ripe for abuse or constitutional violation by law enforcement. [*Defs.' Mot.*, at 9 (arguing Plaintiff cannot cite "common knowledge" and connect it, "without any additional support, to the City's 'actual or constructive knowledge' of its allegedly unconstitutional custom[.]")]. The fallacy

[4] Moreover, the authorities cited by Defendants in support of this argument all reject failure-to-train claims at the summary judgment or appellate level—after development of the facts through discovery—or are otherwise inapposite. [*Defs.' Mot.*, at 5–6 (citing *McCullough v. Wright*, 824 F. App'x 281, 288 (5th Cir. 2020) (finding plaintiff's claims of "unsatisfactory training" were insufficient under *Monell* claim to survive summary judgment); *Connick v. Thompson*, 563 U.S. 51, 68 (2011) (rejecting plaintiff's novel claim that failing to train prosecutors in their *Brady* obligations triggered municipal liability)). Defendants once more conflate the pleading requirements of Rule 8 with the heightened burden on summary judgment.

employed by Defendants here is that because it is so obvious that sexual assault by law enforcement is unconstitutional, the need to train MPD officers on sexual assault was obviated.

It is "elemental," the Fifth Circuit has held, "that police officers need at least some training to perform their job safely and effectively." *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 462 (5th Cir. 2000). Defendants' dismissive position that the prohibition against sexual abuse was so patently obvious Crawford and the City were not required to train MPD officers on the constitutional limits of such excessive force only renders this incident all the more egregious. It also renders the failure to train in this situation more appalling. Plaintiff correctly points out that it is widely known that misuse of a law enforcement position, sexual "shakedowns," and sexual abuse by law enforcement officers all constitute prohibited conduct and a violation of her rights. Simply because such violations are "widely known" does not render her failure to train claim insufficient. Indeed, "a need for more or different training can be *so obvious* and the inadequacy of training so likely to result in a violation of constitutional rights" that the City can be said to have been deliberately indifferent and liability will attach. *Brown*, 219 F.3d at 459 (emphasis added).

The Supreme Court has noted that "[i]t may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees." *City of Canton,* 489 U.S. at 390, 109 S. Ct. at 1205. Nonetheless, it may occur, as here, where "in light of the duties assigned to specific officers" who come into frequent contact with members of the public, a lack of training may almost surely result in constitutional violations. *Id.* The failure to train here is actionable under section 1983. Plaintiff has sufficiently alleged that it should have been obvious to Crawford that the failure to train MPD officers in their patrol tasks "was likely to lead to a violation of the Fourth Amendment rights of those [they] would encounter." *Brown*, 219 F.3d at 460. And viewing the pleadings in the light most favorable to Plaintiff, "it does not matter

whether [MPD] officer training was actually administered, inherently deficient, or facially deficient." *Sanchez*, 2020 WL 1036046, at *36. MPD officers were interacting with members of the public, including females traveling with children, and making unconstitutional stops through use of excessive force "in a manner that suggests training policies that were constitutionally inadequate." *Id.*

**B. Causal link**

For municipal liability to attach, Plaintiff must establish the "causal link" between the deficiency in the training program and the ultimate injury. *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1206. In other words, "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id.* Taking Plaintiff's complaint at face value, the answer to this question must be "yes." It is difficult to imagine that, had the Defendant Officers been trained not to engage in sexual acts while on-duty (including with members of the public or while using agency or government equipment); not to use their positions as law enforcement officers to solicit or coerce sexual contact (including "shakedowns"); not to attempt to initiate sexual contact with members of the public contacted through the context of their law enforcement duties and activities; or on the constitutional limits of force and restraint (including the prohibition against sexual harassment and assault), that this incident would have occurred. *Sanchez*, 2020 WL 1036046, at *36 ("A reasonable jury could conclude that had Defendant Officers Gomez and Rivera received adequate training, they would have taken a different course of action that evening."). Certainly, while this inquiry "may not be an easy task for the fact-finder," determining the causal connection between the failures in training and the ultimate harm is more appropriate for the judge and jury than dismissal on the pleadings. *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1206.

### C. Deliberate indifference

The failure to train municipal employees may also constitute a "policy," but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *Id.* "Thus, although municipalities are not normally liable for inadequate training of employees, failure to properly train constitutes an actionable "policy" if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Thomas*, 800 F. Supp. at 841 (citing *City of Canton* at 390, 109 S.Ct. 1197). To show deliberate indifference, it must be "obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992). "For example, arming officers with guns but failing to train them on the constitutional limits of the use of deadly force would amount to deliberate indifference." *Sanchez*, 2020 WL 1036046, at *36. In such circumstances, where the need for more or different training is obvious, the deliberate indifference element for the policymaker is satisfied. *Connor v. Travis Cty.*, 209 F.3d 794, 796–97 (5th Cir. 2000) (quoting *City of Canton*, 489 U.S. at 390).

Plaintiff's Complaint specifically alleges that the failure to train reflects a conscious policy by Defendants resulting in deliberate indifference. In light of the duties of the individual Defendants—which included setting up police "checkpoints" and interacting with members of the public—the need for training on the limits of excessive force and the prohibition against using their badges to perpetrate sexual assault is "so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the City and Crawford should plausibly be found to have been deliberately indifferent to the need. *Thomas*, 800 F. Supp. at 841; *Brown*, 219 F.3d at

459 ("Thus, when the city arms its officers to carry out this task, there is thus the obvious need to train officers in the constitutional limitations on the use of [excessive] force. This need for training is so obvious that the failure to train is deliberate indifference to constitutional rights."); *Sanchez*, 2020 WL 1036046, at *37 (finding deliberate indifference where "[a] reasonable jury could determine that Chief Allen not only failed to improve training programs but did so despite the clear risk of constitutional violations that failing to train poses."). In the context of her failure to train claim, Plaintiff has sufficiently alleged that Defendants' inadequate training of officers "amounts to deliberate indifference to the rights of persons with whom the police come in contact." *City of Canton*, 489 U.S. at 388, 109 S.Ct. 1197.

### III. PLAINTIFF HAS PLEADED SUFFICIENT FACTS TO SUPPORT HER SUPERVISORY LIABILITY CLAIM AGAINST CRAWFORD IN HIS INDIVIDUAL CAPACITY

Plaintiff has sufficiently stated a claim against Crawford in his individual capacity. As discussed above, Plaintiff has alleged facts showing that Crawford was responsible for promulgating and enforcing unconstitutional policies within the MPD. In particular, Plaintiff alleges that Crawford implemented a policy that promoted unconstitutional patrol activities where officers would essentially be given free rein to perform "shakedown" checkpoints in exchange for sexual favors—and that they would be insulated from accountability for their illegal actions. Plaintiff has also established that Crawford "failed to develop, manage, enforce, and/or otherwise promote policies and procedures relating to sexual misconduct by law enforcement, including sexual harassment, sexual assault, or sexual abuse of any member of the community or fellow agency employees." [*Complaint*, ECF No. 1, ¶ 84]. Crawford is also alleged to have failed to develop policies related to unconstitutional restraint of members of the public. [Id. at ¶ 100]. A supervisory official may be held liable under section 1983 only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies

that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir.2008). Accordingly, Plaintiff has stated a claim against Crawford in his individual capacity because she has sufficiently pleaded that Crawford implemented unconstitutional policies that causally resulted in the constitutional injury. *Id.*

**A. Qualified Immunity**

Defendant Crawford contends that Plaintiff "cannot demonstrate a constitutional violation" to overcome Crawford's entitlement to qualified immunity. [*Defs' Mot.*, at 10–13].

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Whitley*, 726 F.3d at 638 (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). The qualified immunity defense is intended to provide protection to "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Qualified immunity is

> an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an immunity from suit rather than a mere defense to liability[.]

*Est. of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375 (5th Cir. 2005). After a defendant invokes the defense of qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *Kitchen v. Dallas County*, 759 F.3d 468, 476 (5th Cir. 2014). A plaintiff seeking to overcome qualified immunity must plead sufficient facts to make it plausible "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Whitley*, 726 F.3d at 638 (quoting *al–Kidd*, 131 S.Ct. at 2080).

*i. Violation of a Constitutional Right*

"Individual capacity claims are usually anchored to a supervisory official's failure to train or to the supervisory official's implementation of 'a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Lou v. Lopinto*, No. CV 21-80, 2023 WL 3569834, at *3 (E.D. La. May 19, 2023). While Plaintiff cannot hold Crawford vicariously liable under § 1981 for the acts of his subordinates, *McCully*, 406 F.3d at 381, Crawford may be liable as a supervisor for the violation of Plaintiff's constitutional rights. When, as here, a plaintiff alleges a failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Id.* (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir.1998)); *see Burge*, 336 F.3d at 370; *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir.2003); *Thompson*, 245 F.3d at 459; *Taylor*, 15 F.3d at 452–54 & nn.7–8 (5th Cir.1994) (en banc) (adopting the *City of Canton* standard of municipal liability—that is, requiring at least deliberate indifference—for supervisory liability). Plaintiff has pleaded adequate facts to plausibly establish that her constitutional rights were violated, and the analysis of the first two elements are set forth comprehensively above.

Regarding the third prong, deliberate indifference, Plaintiff has also sufficiently alleged that Crawford acted with a conscious disregard for the policies enacted and the constitutional violations that might ensue. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *McCully*, 406 F.3d at 381. "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *Id*. (citation omitted). However, a single incident, as opposed

to a pattern of violations, can in some circumstances suffice to demonstrate deliberate indifference. *Id.* at 385; *Brown v. Bryan Cty.*, 219 F.3d at 462 (finding deliberate indifference based on a single incident when there was an utter failure to train and supervise); *Hobart v. Estrada*, 582 F. App'x 348, 357 (5th Cir. 2014) ("Even without evidence of a pattern of similar incidents resulting from a deficient training policy, a plaintiff can still establish deliberate indifference under the single incident exception."). As set forth above, Plaintiffs have identified facts that evidenced facts that the Crawford's policies enabled the defendant officers, acting individually and in concert, to engage in a well-rehearsed shakedown of Plaintiff while separating her from her children, using their position as law enforcement to extort sexual favors from her under threat of jail or worse, and without fear of reprimand.

*ii. Plaintiff was not required to provide legal authority on the clearly established prong in her initial pleading*

Defendants contend that Plaintiff cannot overcome qualified immunity as it relates to Crawford in his individual capacity because she has not met her "obligation of pointing to a specific case" in her initial pleading. [*Defs.' Mot.,* at 12]. Based on a creative and novel framework of a "nomination phase" and a "qualification phase,"[5] Defendants argue that because Plaintiff has not proffered, *in her Complaint*, a case on point demonstrating the clearly established violation of constitutional rights, her claim must fail. [Id.]. They offer no legal support for this pleading requirement. Defendants' advancement of this argument demonstrated a conflated understanding of the standards of liberal pleading—and thus, this motion for judgment on the pleadings—and summary judgment.

[5] "Nomination" and "qualification" appear to be Defendants' creative take on the qualified immunity framework, and Defendants cite no case law identifying "nomination" and "qualification" as specific steps to overcoming immunity in an initial pleading.

Defendants cite *Vann v. Southaven* to "illustrate[] the nomination phase." [Id.]. *Vann* involved a § 1983 excessive force claim against an officer who fatally shot an individually during a "small-scale drug sting operation." 884 F.3d 307, 309 (5th Cir. 2018). But *Vann* is both factually and procedurally distinguishable from here. That Fifth Circuit opinion was issued after the *Vann* case proceeded through discovery and the defendant city and officer moved for summary judgment. *Id.* On appeal, the Fifth Circuit affirmed the district court's grant of summary judgment. *Id.* at 310. In affirming, the Court noted that at both the summary judgment and appellate stages, Plaintiff failed to identify *any* authoritative case that established that the officer's use of force violated clearly established law. *Id.* Put simply, the legally demanding framework necessitated on summary judgment and on appeal does not apply to the pleading stage, where discovery has not commenced and Plaintiff's *Complaint* serves specifically to place on notice all defendants of the facts and the constitutional violations alleged. Aside from summary citations to *Vann*, Defendants do not analyze how the standards for surviving summary judgment apply to a Rule 12(c) motion to dismiss—nor can they.

For similar reasons, Defendants' argument that Plaintiff's Complaint also fails for failing to provide an "authoritative" and "specific" case is equally unavailing. Certainly, on summary judgment, Plaintiff must carry her burden to rebut the qualified immunity defense by establishing "a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* at 309. But neither this Court nor the Federal Rules of Civil Procedure require as much at the pleadings stage, and such an argument is premature. Indeed, Defendants seem to acknowledge as such in their motion, claiming "Hayes *will not* come close to satisfying her burden of identifying a factually analogous case . . . holding that Chief Crawford's specific conduct was unconstitutional." [*Defs.' Mot.*, at 13 (emphasis added)]. Plaintiff has not yet had the procedural

opportunity to do so. Dismissal premised on speculation as to which cases Plaintiff *may* supply in the future is wholly unsupported at this phase of the litigation, and must be denied.

Finally, even assuming *arguendo* that Plaintiff is required to prove this prong, case law makes clear that qualified immunity may be overcome under a supervisory failure to train claim. *Hobart*, 582 Fed.App'x. at 356–57 (noting that a denial of qualified immunity for the police chief requires "proof that the failure to train on the appropriate use of force amounted to deliberate indifference."); *Lou*, 2023 WL 3569834, at *5 (denying Rule 12(c) judgment on the pleadings and finding that plaintiffs "have alleged sufficient facts to state a § 1983 claim against [the Sheriff] in his individual capacity based upon his alleged failure to train the defendant deputies and his alleged implementation of unconstitutional policies" that violated plaintiffs' constitutional rights); *Porter*, 659 F.3d at 446 (finding supervisory liability under § 1983 for failure to adopt policies); *Cozzo v. Tangipahoa Parish Council -- President Gov't*, 279 F.3d 273, 286-87 (5th Cir. 2002) (quoting *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001) (finding supervisory liability under § 1983 for failure to train and supervise); *c.f. Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005) (granting qualified immunity to chief of police for failure to train claim where plaintiff failed to establish any of the three elements under § 1983—failure to train; causation; or deliberate indifference). Importantly, "if a factual dispute must be resolved to make the qualified immunity determination, that fact issue is material" and must be submitted to the factfinder rather than discharged through dismissal. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). Plaintiffs will be able to show that "pursuing a policy of inadequate training or supervision" amounts to a violation of clearly established law. *Id.*, at n.4.

## IV. EVEN IF THE CLAIMS LACK SUFFICIENT FACTUAL ALLEGATIONS, DISMISSAL IS INAPPROPRIATE AND PLAINTIFF SHOULD BE AFFORDED AN OPPORTUNITY TO SEEK LEAVE TO AMEND

Plaintiff's Complaint contains sufficient factual allegations to state a claim upon which relief can be granted, and therefore dismissal is inappropriate. However, should the Court find any part of Plaintiff's Complaint lacks factual allegations or specificity to plausibly state a claim, Plaintiff respectfully requests the Court afford her an opportunity to seek leave to amend.

A complaint should be dismissed with prejudice only when it is obvious the plaintiff cannot prevail on the facts as alleged *and* an opportunity to amend would be futile. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). Amendments are futile only if the complaint *as amended* would fail to state a claim upon which relief could be granted. *Id*. Applying the same standard of legal sufficiency as applies under Rule 12(b)(6), the Court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Because the basis for Defendants' Motion for Judgment on the Pleadings is largely one of insufficient notice, Plaintiff should be afforded an opportunity to seek leave to amend. *See id.*; *Lucero v. Target Corp.*, No. EP-10-CV-235-DB, 2010 WL 11602569, at *2 (W.D. Tex. Aug. 6, 2010) (permitting leave to amend even where original petition was "clearly deficient."); *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 179 (5th Cir. 1977) (finding court abused its discretion in denying plaintiff's motion for leave to amend and supplement their civil rights complaint where there was "no indication . . . that the defendants would have been unduly prejudiced if leave had been granted" and noting that "[g]ranting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim.").

## CONCLUSION

The factual allegations in Plaintiff's Complaint expressly allege that Defendants individually and collectively violated Plaintiff's constitutional rights by using excessive force,

being deliberately indifferent to her protected liberty interest in bodily autonomy, sexually abusing her, and committing other tortious acts on May 27, 2020. The Complaint further alleges that these constitutional deprivations were the result of a pattern or practice of unconstitutional policies and procedures at the City of Magee Police Department. Indeed, Plaintiff's Complaint fully comports with Rule 8's pleading requirements—including the "minimal factual allegations" about the police training programs at this pleading stage. *Thomas*, 800 F. Supp. 2d at 842–43. At this stage of the litigation, Plaintiff's Complaint is not required to explicitly allege every fact necessary to win at trial. *Barnes*, 2023 WL 4097075, at *11. Given that it is "exceedingly rare that plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery," Plaintiff's Complaint is sufficient as the Court can reasonably infer the reasonable contours of her claims. And the Complaint demonstrates that, at very least, there is "more than a sheer possibility" that Defendants are liable for this conduct. *See Iqbal*, 556 U.S. at 678. Therefore, Plaintiff respectfully requests the Court deny Defendants' Motion for Judgment on the Pleadings.

Respectfully submitted this 3rd day of January, 2024.

*/s/. Catherine E. DiSanto*
G. Bryan Ulmer, III (PHV #60096)
Catherine E. DiSanto (PHV #60097)
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290
(307) 733-5248 (fax)
ulmer@spencelawyers.com
disanto@spencelawyers.com

Vicki R. Slater (MSB #9759)
THE LAW OFFICES OF VICKI R. SLATER
Post Office Box 23551
Jackson, MS 39205
(601) 987-8184

(601) 987-8188 (fax)
vicki@vickislater.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was sent via CM/ECF to all counsel of record on this 3rd day of January 2023.

*/s/ Catherine E. DiSanto*
G. Bryan Ulmer, III (PHV #60096)
Catherine E. DiSanto (PHV #60097)
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street, P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290
(307) 733-5248 (fax)
ulmer@spencelawyers.com
disanto@spencelawyers.com