# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**VIRGINIA HAYES**,

        *Plaintiff*,

v.

**THE CITY OF MAGEE, MISSISSIPPI; CHARLES CRAWFORD,** *in his individual and official capacities as chief of police*; **VERNON DAMPIER,** *in his individual capacity*; **CHARLES ALEXANDER,** *in his individual capacity*; **LINCASTER EASTERLING,** *in his individual capacity*.

        *Defendants*.

CAUSE NO. 3:23-CV-327-CWR-ASH

## ORDER

Before the Court is a motion for judgment on the pleadings by Defendants, the City of Magee and former Chief of Police Charles Crawford. Docket No. 16. Upon review, the motion will be granted in part and denied in part.

**I.    Factual and Procedural History**[1]

Plaintiff Virginia Hayes and her sons (then aged nine and five) began their journey to Florida from Carlsbad, New Mexico, on May 25, 2020. On May 25, they traveled first to Amarillo, Texas, to pick up Ms. Hayes's friend and travel companion, Katarina Evans. The

---

[1] As noted below, this Court "must accept the well-pleaded facts as true and view them in light most favorable to the plaintiff." *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins.*, 29 F.4th 252, 256 (5th Cir. 2022).

group was driving through Mississippi around 1:00 am on May 27 when they were stopped at a police checkpoint outside the City of Magee ("City").

Magee holds itself as "[a] small city with a big heart!" City of Magee, http://www.cityofmagee.ms.gov/. It proclaims that it is "a great place for families, businesses, sports, and fun." *Id.* These travelers will disagree with that assessment. Law enforcement officers can (and will) engage in mischief in the darkness of night. *See Jamison v. McClendon*, 476 F. Supp. 3d 386 (S.D. Miss. 2020). The allegations described throughout this opinion, if reported by news sources, would be preceded with a word of caution due to the graphic and egregious nature of the conduct. In other words, it is not suitable for general audiences.

As the travelers approached the patrol cars and flashing lights, Magee Police Department ("MPD") Officers Vernon Dampier, Charles Alexander, and Lincaster Easterling directed Ms. Evans, who was driving, to bring the car to a stop in the left-hand lane. Ms. Evans did as she was directed. All three officers were fully uniformed and were carrying radios and flashlights. Each officer had a body-worn camera. Each body-worn camera was turned off. Each car had a patrol dash camera. Each patrol dash camera was turned off.

Officers Easterling and Dampier approached the car to speak to Ms. Evans and Ms. Hayes. During their conversation, Officer Easterling noticed a container of marijuana in the center console. When the officers inquired about the marijuana, Ms. Hayes explained that she was a medical marijuana patient and provided Officer Dampier with her active Medical Cannabis Program Patient Identification Card issued by the New Mexico Department of Health. Officer Dampier then instructed Ms. Hayes to exit the vehicle and follow him to his patrol car. Ms. Hayes complied.

2

Officer Easterling stayed near Ms. Hayes's vehicle to watch her children and Ms. Evans while Officers Alexander and Dampier escorted Ms. Hayes to the patrol car. Once at the patrol car, one of the officers told Ms. Hayes that she had two options: she could either perform sexual acts on the officers, "or the [o]fficers would search her vehicle, take her to jail, and take her children away from her." Docket No. 1 ¶ 38. Ms. Hayes told the officers that she did not want to go to jail. Terrified and feeling as though she had no other choice, she reluctantly indicated that she would comply with their demand. Recall, it's 1:00 in the morning. The innocent travelers are traveling through a foreign place with young children trying to get to their destination and now being confronted by gun-toting policemen, who threaten to jail her *and* take away her children.

The officers then escorted Ms. Hayes to the front passenger seat of the patrol car and forced her to sit down. Before Ms. Hayes had "settled in the front seat, the first officer—either Dampier or Alexander—unzipped his pants, put his penis in her face, and told her to 'suck it.'" Docket No. 19 at 3. As she was being sodomized by the first officer, Ms. Hayes "opened her eyes to see a phone with the flash on." Docket No. 1 ¶ 43. Ms. Hayes believed that the incident was being recorded and could hear the officers as they made crude remarks about her to each other. At some point, the officers switched positions. She was orally raped by the second officer for a few minutes before he ended the encounter. The officers then zipped their pants. They decided not to give Ms. Hayes a ticket and dismissed her.

As Ms. Hayes walked back to her vehicle, either Officer Alexander or Dampier asked Officer Easterling "if he 'wanted some too.'" Docket No. 1 ¶ 51. Officer Easterling responded: "'Nah, I'm good.'" *Id.* ¶¶ 51–52. After Ms. Hayes was subjected to these horrifying and

3

despicable indignities, she rejoined her children and Ms. Evans in the car. Having now been satisfied, the Officers waved them through the checkpoint, and they left the scene.

Ms. Hayes filed suit against the City of Magee, former Chief of Police Charles Crawford, and Officers Dampier, Alexander, and Easterling on May 22, 2023. She asserts various claims under 42 U.S.C. § 1983—including excessive force, unconstitutional conditions of detainment, bystander liability claims against the individual officers, and municipal liability claims against the City of Magee and Chief Crawford in his official capacity.[2] Ms. Hayes also asserts a failure-to-train supervisory liability claim against Chief Crawford in his individual capacity.[3] She contends that the City and Chief Crawford are liable for their failure to adequately train and supervise their employees. She adds that "[t]he policies and customs of the MPD . . . did not require an internal investigation or an external, independent investigation following a citizen complaint of sexual assault by an MPD law enforcement officer," and that "[d]espite knowledge of the assault," Chief Crawford "did not refer the incident out for investigation." *Id.* ¶¶ 87-88.

The individual officers answered the complaint on September 5; the City and Chief Crawford answered on September 6. The City and Chief Crawford now move for judgment on the pleadings. Their arguments, and Ms. Hayes's responses, are addressed below.

---

[2] Ms. Hayes's claims against Chief Crawford in his official capacity are treated as claims against the City. *See Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279–80 (5th Cir. 2015) ("Because [the Chief] was sued in his official capacity, the claim against him is treated as a claim against Lafayette, a municipality.").

[3] This claim can be easily disposed. Ms. Hayes does not allege that Chief Crawford was personally involved in the excessive force or her detainment, nor does she allege sufficient facts to overcome the Chief's qualified-immunity defense. *See Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) ("A supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."). Thus, Crawford's motion is granted on this ground.

## II.     Legal Standard

A motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quotation marks omitted) (citations omitted); FED. R. CIV. P. 12(c).

The standard for deciding a motion for judgment on the pleadings is the same as the standard used to decide a Rule 12(b)(6) motion to dismiss. *See Q Clothier New Orleans, L.L.C.*, 29 F.4th at 256. "The court must accept the well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Id.* The plaintiff need not provide "detailed factual allegations," but must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

## III.     Discussion

"Municipal liability for civil rights violations under § 1983 is based on causation rather than *respondeat superior*." *Bolton v. City of Dall.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Liability will attach "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). "To state a claim against a municipality under *Monell* and its progeny, a plaintiff must plead that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (citation modified).

For the purposes of their motion, the City and Chief Crawford do not dispute that Ms. Hayes has alleged an underlying constitutional violation. *See* Docket No. 17 at 4 n.2. How can

5

they? *See generally Tyson v. Sabine*, 42 F.4th 508 (5th Cir. 2022) (reversing, in part, the grant of qualified immunity where the deputy unlawfully seized and coerced the plaintiff to engage in sexual acts).

The Court begins its discussion by addressing whether Hayes has satisfied the second element—that is, whether she has alleged enough facts to identify a policymaker for the City of Magee.

### A. Policymaker

"A policymaker is one who takes the place of the governing body in a designated area of city administration." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010) (quotation marks omitted). "[T]hey decide the goals for a particular city function and devise the means of achieving those goals." *Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir. 1984) (en banc).

Ms. Hayes contends that Chief Crawford is the relevant policymaker. Docket No. 1 ¶ 80. Defendants disagree. In their view, "[i]n Mississippi, the Board of Aldermen is the final policymaker, not the police chief." Docket No. 17 at 7. The Court need not labor long on this issue since "failing to plead the specific identity of the policymaker" is not a basis for dismissal at this stage in litigation.[4] *Groden v. City of Dall.*, 826 F.3d 280, 285 (5th Cir. 2016).

---

[4] Contrary to Defendants' assertion, it is not always true that the Board of Aldermen is the final policymaker in the State of Mississippi. *See, e.g.*, *Williams v. City of Yazoo*, No. 3:15-CV-103-HTW-LRA, 2020 WL 6122357, at *16 (S.D. Miss. Oct. 17, 2020) (finding that the chief of police was the final policymaker "regarding all law enforcement decisions in Yazoo City, Mississippi."); *see also* Roles of Mayor/Council in Law Enforcement Activities of Municipality, Miss. Att'y Gen. Op. No-2006-00065, 2006 WL 1184478, at *1 (Miss. A.G. Mar. 23, 2006) ("[T]he daily operations of the police department are solely within the authority of the police chief."). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Courts consider the duties assigned to the alleged policymaker as well as whether those duties have been delegated. *See Webb v. Town of Saint Joseph*, 925 F.3d 209, 215–16 (5th Cir. 2019). Because the policy inquiry depends on state and local law, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989), the relevant policymaker for the ordered action varies depending on the municipality being sued. *Compare K.B. v.*

To survive judgment on the pleadings, Hayes "needed only to plead facts—facts which establish that the challenged policy was promulgated or ratified by the city's policymaker. [Her] complaint did not need to supply an answer to the *legal* question of the specific identity of the city's policymaker under the relevant statutory scheme."[5] *Id.*; *see also Gonzalez v. Webb Cnty.*, No. 5:20-CV-52, 2022 WL 190709, at *4 (S.D. Tex. Jan. 21, 2022) ("If failing to name a policymaker is not a basis for dismissal, it follows that actually naming a policymaker—even if the identification is ultimately erroneous—is not a basis for dismissal.").

Ms. Hayes has satisfied her burden at this stage of litigation. She alleges that as Chief of Police, Crawford had "control and supervision of all police officers employed by" the city. Docket No. 19 at 9 (citing MISS. CODE. ANN. § 21-21-1). She adds that he "was responsible for the overall administration of department operations and direction of the department's planning and research efforts, fiscal management, training initiatives, and professional standards, as well as for ensuring his personnel obey the laws of the State of Mississippi." *Id.* (citing Docket No. 1 ¶ 11). Viewed in the light most favorable to Ms. Hayes, the Court concludes that she has alleged sufficient facts to "allow[] for a reasonable pleading inference that" Chief Crawford is the policymaker for the City of Magee Police Department. *Groden*, 826 F.3d at 286; *see also infra* Section III.B.2.

---

*Adams*, 480 F. Supp. 3d 746, 755 (S.D. Miss. 2020) (chief of police was the final policymaker), *with Riggins v. City of Indianola*, 196 F. Supp. 3d 681, 691 (N.D. Miss. 2016) (chief of police was not the final policymaker).

[5] That *Groden* involved a motion to dismiss, and not a motion for judgment on the pleadings, is immaterial since both motions are evaluated under the same standard. *See Q Clothier New Orleans,* 29 F.4th at 256.

7

### B. Official Policy as the Moving Force

"Official municipal policies can take various forms." *Gomez*, 18 F.4th at 777. They often appear as formal "written policy statements, ordinances, or regulations, but may also arise in the form of [an unwritten] widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quotation marks omitted).

Some policies are facially unconstitutional. *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 755 (5th Cir. 1993) ("Where the challenged policy is unconstitutional on its face, no additional evidence is needed other than a statement of the policy by the policymaker, and its exercise, for it is plain that the constitutional violation flows directly from the policymaker's deliberate choice." (citation modified)). But where the challenged policy is facially valid, meaning that it "causes, but does not compel, a constitutional violation," a plaintiff must show that the policymaker acted with deliberate indifference to a known or obvious consequence of their action. *Id.*

Ms. Hayes is not challenging a facially unconstitutional policy. She asserts two separate theories of municipal liability to prove that the City of Magee's policies caused her constitutional harm. The first theory is based on a failure to train while the second is based on ratification.[6] The Court addresses each of these theories in turn.

1. <u>Failure to Train</u>

---

[6] Defendants contend that Ms. Hayes only alleges a failure to train claim against the City and Chief Crawford in his official capacity. *See* Docket No. 17 at 4. For the reasons discussed below, the Court disagrees.

To state a claim for failure to train, Ms. Hayes must plausibly allege that: "(1) the city failed to train or supervise the officers involved, (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights, and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citation modified).

A municipality acts with deliberate indifference when its policymaker "disregard[s] a known or obvious consequence of [their] action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation marks omitted). The policymaker must have "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and nevertheless "choose to retain that program." *Id.* To show deliberate indifference, Ms. Hayes "must allege a pattern of similar constitutional violations by untrained employees." *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021) (quotation marks omitted).[7]

Defendants argue that Ms. Hayes's complaint lacks sufficient factual allegations to state a claim against the City for the failure to train its officers on excessive force and sexual misconduct. They argue, *among other things*, that Ms. Hayes cannot "overcome the third element of deliberate indifference" because she has not alleged "any past acts of sexual assault or the use of excessive force relating to the City." Docket No. 17 at 8 (emphasis omitted). Defendants are correct.

---

[7] "[W]here a plaintiff does not allege such a pattern, it is still possible to establish deliberate indifference through the single-incident exception." *Hutcheson*, 994 F.3d at 482. This "narrow" exception is "generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624. Such circumstances are not present here.

9

Ms. Hayes alleges several constitutional violations. Under Fifth Circuit precedent, however, these allegations, alone, are insufficient to establish a claim that the City of Magee had a policy of inadequate training and supervision.

Ms. Hayes asserts that she was unlawfully detained, strategically separated from her children, threatened, coerced, and sexually assaulted by two officers while a third officer stood watch. She asserts that none of the officers complied with MPD's body-worn camera policy and that all of them were complicit in the harms she endured. But because Ms. Hayes has not alleged "a pattern of abuses that transcends the [violations] made in [her] single case," she cannot hold the City of Magee liable for its failure to train or supervise the officers who assaulted her. *Piotrowski v. City of Hou.*, 237 F.3d 567, 582 (5th Cir. 2001).

The pleading standard for *Monell* claims is a significant barrier to plaintiffs, like Ms. Hayes, who must prove the elements of their claims without the benefit of discovery. It effectively bars such plaintiffs from seeking justice against their alleged abusers—even rapists. Their claims are often dismissed *not* because they lack merit, but because these plaintiffs are denied access to the very facts that they need to establish liability. The Federal Rules of Civil Procedure were not designed to compel such a result, nor was Section 1983.

In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), "the Supreme Court considered the propriety of the Fifth Circuit's heightened pleading standard for § 1983 cases against municipalities." *Bond v. Nueces Cnty.*, No. 20-40050, 2022 WL 4595000, at *5 (5th Cir. Sept. 30, 2022) (quotation marks omitted). The Court confirmed that pleadings for municipal liability claims are governed by Rule 8 of the Federal Rules of Civil Procedure and specifically rejected a heightened pleading requirement. It explained that "in the absence of such an amendment [subjecting Rule 8 to the added

10

specificity requirement of Rule 9(b)], federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims." *Leatherman*, 507 U.S. at 168–69.

*Leatherman* has not been overruled. *See Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (citing to *Leatherman* for the proposition that there is "no heightened pleading standard for municipal § 1983 liability"). It has survived the Supreme Court's later decisions in *Twombly* and *Iqbal*, both of which further clarified that Rule 8 does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009) (same).

In the aftermath of *Twombly and Iqbal*, however, courts are split on the level of specificity needed to plead municipal liability claims. Some circuits have adopted a flexible approach, permitting plaintiffs to proceed on their claims without identifying a detailed pattern of prior constitutional violations. *See, e.g., White v. City of Chicago*, 829 F.3d 837, 843-44 (7th Cir. 2016); *Hoefling v. City of Miami*, 811 F.3d 1271, 1279-81 (11th Cir. 2016); *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841–45 (S.D. Tex. 2011) (describing different approaches taken by courts). Others, like the Fifth Circuit, have adopted a more demanding and constricting approach.

The Fifth Circuit "has resumed applying the rule that a plaintiff must plead specific past instances to allege municipal liability." *Bond*, 2022 WL 4595000, at *5. This "specific past instances requirement" operates much like a heightened pleading standard the Supreme Court rebuked in *Leatherman*. *See id.* (finding a complaint deficient where plaintiff alleged "ten specific policies," but "did not provide past examples of harm caused by these alleged

11

policies."); *see also Peterson v. City of Fort Worth*, 588 F.3d 838, 851 n. 4 (5th Cir. 2009) (affirming that "[t]wenty-seven incidents" of excessive force "in four years, with no context as to the overall number of arrests or any comparisons to other cities, [was] not sufficient evidence of a pattern rising to the level of a policy."); *Pineda v. City of Hou.*, 291 F.3d 325, 329 (5th Cir. 2002) ("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces.").

The problem with the "specific past instances" requirement in its present form is that "[a]n injured plaintiff is not likely to document proof of a policy or disposition, either of the policymaker or throughout the police force, that disregards human life and safety." *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985). It is likely that a plaintiff "may encounter difficulties in making that proof, because of the lack of available credible witnesses and the avenues for dispute and distraction over the actual facts of each specific incident." *Id.* That is the situation today. Ms. Hayes has not alleged a pattern of similar rapes, so she cannot proceed on a failure to train theory.[8]

This doctrinal limitation provides an undue barrier of protection for municipalities, even though the Supreme Court has made "it quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit." *Leatherman*, 507 U.S. at 166. In effect, however, *Monell*'s stringent pleading requirements have exposed the doctrine to the same type of critiques leveled against qualified immunity—that the doctrine does more to insulate municipalities from suit than hold them accountable for their actions. *Cf. Jamison*, 476

---

[8] One would certainly hope that a plaintiff could never allege a pattern of forced sodomy by a city's police force.

12

F. Supp. at 391 (explaining that "[i]n real life," the doctrine of qualified immunity "operates like absolute immunity.").

The Court concludes, however, that Ms. Hayes may proceed on her theory of ratification.

### 2. Ratification

Ratification occurs when a municipality's "authorized policymakers approve a subordinate's decision and the basis for it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The policymaker's "ratification would be chargeable to the municipality because their decision is final." *Id.*; *see also Martinez v. City of Rosenberg*, 123 F.4th 285, 289 (5th Cir. 2024) (explaining that "[a]n official policy is evinced . . . when an official with final policymaking authority ratifies a subordinate's unconstitutional conduct").

"The precise standard by which to plead a ratification theory is somewhat unclear as discussed and applied in other Fifth Circuit precedent." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 537 (S.D. Tex. 2020) (citing *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 794–97 (S.D. Tex. 2013) (collecting cases)). But one thing is clear—to proceed on a theory of ratification, a plaintiff must show "knowing approval by a policymaker of both conduct and its underlying, improper basis." *Id.* Additionally, Fifth Circuit precedent requires a plaintiff to prove that their case constitutes an extreme factual situation or involved manifestly indefensible conduct. *Id.*; *see also World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) ("[U]nless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom.").

Ratification in the context of *Monell* claims is best understood through the Fifth Circuit's decision in *Grandstaff v. City of Borger*. In that case, the court upheld a jury verdict against the City of Borger, after its officers mistakenly killed an innocent man. The Fifth Circuit explained that "[f]ollowing this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that no changes had been made in their policies." *Grandstaff*, 767 F.2d at 171. Rather than address the issue, the City of Borger focused solely on "avoid[ing] legal liability." *Id.* at 166. The court noted that the city's response to "so gross an abuse of the use of deadly weapons [said] more about the existing disposition of the [c]ity's policymaker than would a dozen incidents where individual officers employed excessive force." *Id.* at 171. It explained that if an "episode of such dangerous recklessness obtained so little attention and action by the [c]ity policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger." *Id.* Reasoning that the policymaker's "subsequent acceptance of dangerous recklessness . . . tend[ed] to prove his preexisting disposition and policy," the court affirmed the judgment against the City. *Id.* at 171-72.

Viewing the facts in the light most favorable to Ms. Hayes, this case presents like *Grandstaff*. Ms. Hayes has alleged extreme, indefensible conduct by MPD officers, and she has provided a reasonable inference that such conduct was accepted in the City of Magee.

Not one, not two, but *three* MPD police officers unlawfully detained Ms. Hayes and coerced her into oral sodomy against her will. And to hide and cover-up their misdeeds, all three officers failed to follow MPD's body-worn camera policy. All three failed to have their dashcams in the patrol cars turned on. The officers "acted quickly and methodically in removing [Ms. Hayes] from her vehicle and separating her from her children." Docket No.

14

19 at 12. They acted without regard for Ms. Hayes's constitutional rights and without regard to their sworn oaths to uphold the law and faithfully perform their duties. Most disturbing, however, is that the officers acted without regard for Ms. Hayes's two young children—who were sitting in the backseat of their car, several feet away from their mother as she was being raped and humiliated by police officers.

"It is obvious that the right to bodily integrity forbids a law enforcement officer from sexually abusing a person by coercing them to perform nonconsensual physical sex acts for his enjoyment." *Tyson*, 42 F.4th at 520. It is well-established "that physical sexual abuse by a government official violates the Fourteenth Amendment." *Id.* This is especially true where the abuse alleged "is a particularly egregious and extreme circumstance[ ] of assault by a state official." *Id.* (quotation marks omitted).

As was the case in *Grandstaff*, Defendants' focus was on "avoid[ing] legal liability." 767 F.2d at 166. In the face of these harrowing allegations, Defendants did not discharge the officers. Defendants did not suspend or reprimand the officers. Defendants did not *even* investigate Ms. Hayes's reports of sexual assault. They did not even refer the matter to any criminal investigative authority. "When the official policymaker knows about misconduct yet allegedly fails to take remedial action, this inaction arguably shows acquiescence to the misconduct such that a jury could conclude that it represents official policy." *Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020).

The strategic nature of the officers' heinous acts, coupled with the City's subsequent inaction, makes a plausible showing of ratification. Such conduct was part of "the way things are done and have been done in the City of [Magee]." *Grandstaff*, 767 F.2d at 171. "This is not merely a problem of 'bad apples.' It's a problem enabled by power imbalances between

15

officers and community members and a patriarchal culture of secrecy and silence. It commonly arises in police departments where leadership and local authorities ignore and tolerate patterns of abuse." Jenn Rolnick Borchetta & Linda Morris, *Taking Action to Stop Police Sexual Violence*, ACLU (Oct. 19, 2023), https://www.aclu.org/news/criminal-law-reform/taking-action-to-stop-police-sexual-violence; *see also Vess v. City of Dall.*, 608 F. Supp. 3d 434, 454 (N.D. Tex. 2022) (explaining that "[n]umerous courts have held that a policy of lack of discipline and protection plausibly emboldens officers to engage in misconduct." (collecting cases)). That power balance is even greater between officers and those like Ms. Hayes who are foreign to the jurisdiction. At least members of the community have some power, if nothing more than knowing others in the community who can come to their aid or rally with them.

The question at judgment on the pleadings is whether Ms. Hayes has pleaded sufficient facts "to state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570. That is, has Ms. Hayes alleged enough facts "to raise a reasonable expectation that discovery will reveal evidence" she needs to support her case? *Id.* at 556. The Court concludes she has. On these allegations, one can understand if these innocent travelers will forever reject the City of Magee's invitation to "[c]ome visit and enjoy our small city with a big heart!" Accordingly, Defendants' motion is denied on this ground.

## IV.  Conclusion

The motion for judgment on the pleadings is granted in part and denied in part. With respect to Ms. Hayes's supervisor liability claim against Chief Crawford in his individual capacity, judgment is granted in favor of the Chief. As for the remaining claims against the City of Magee and Chief Crawford in his official capacity, the motion is denied. Within 10

days of this Order, the parties shall contact the Magistrate Judge to schedule a case management conference.

**SO ORDERED**, this the 30 day of September 2025.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE